[Cite as *In re Muldrow*, 2011-Ohio-4310.]



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Fourth Floor
Columbus, OH 43215
614.387.9860 or 1.800.824.8263
www.cco.state.oh.us

IN RE: YVAN L. MULDROW


YVAN L. MULDROW

     Applicant


Case No. V2010-50302

Commissioners:
Karl C. Kerschner
Elizabeth Luper Schuster

ORDER OF A TWO
COMMISSIONER PANEL

{1}On February 27, 2009, the applicant filed a reparations application as the result of an assault which occurred on September 27, 2008. On October 19, 2009, the Attorney General issued a finding of fact and decision denying the applicant's claim based upon his failure to fully cooperate with police as is required by R.C. 2743.60(C). The Attorney General's investigation revealed that the applicant agreed to meet with the detective concerning the assault but failed to appear at the meeting. Furthermore, the applicant did not return the detective's phone messages. On November 12, 2009, the applicant submitted a request for reconsideration. On March 10, 2010, the Attorney General rendered a Final Decision finding no reason to modify the initial decision. On April 2, 2010, the applicant filed a notice of appeal from the March 10, 2010 Final Decision of the Attorney General. Hence, a hearing was held before commissioners Ostry, Kerschner, and Schuster on November 17, 2010 at 11:10 A.M.

{2}The applicant and his attorney, Michael Falleur, appeared while Assistant Attorney General Heidi James represented the state of Ohio.

{3}The sole issue in this case is whether the applicant fully cooperated with law enforcement as required by R.C. 2743.60(C). The applicant characterized his failure

as a miscommunication rather than a failure to cooperate. The Attorney General believes the evidence will show that law enforcement made a substantial and diligent effort to investigate the criminal incident but their efforts were thwarted by the applicant's failure to fully cooperate.

{4}Yvan Muldrow testified that after he was shot he went to The Ohio State University Hospital East (OSU). He stated that he spoke to a detective while at the hospital, and described what happened. After spending approximately six hours at the hospital he was released and returned home. However, he continued to experience discomfort and he returned to the hospital. It was discovered that bones in his wrist were broken and he was transported from OSU East to OSU North and admitted. The applicant stated he had one telephone conversation with the police during which an officer arranged to meet him at his residence. The applicant testified he did not receive any additional calls from the police. And that he has had no communication with the police since the date of the telephone call.

{5}Upon cross-examination, the Attorney General had the witness read from the police report. The applicant read the following: "#1 stated that he was inside the location and he stated that he was talking to some guys that he did not know and they started to argue. Victim #1 stated that he went outside of the location. Victim #1 stated that the same guys he was arguing with started to shoot at him as he ran inside the bar." The applicant related that he is listed as Victim #1 in the police report but he averred that he never told the detective that he ran back into the bar. The Attorney General marked the police report as State's Exhibit A.

{6}The applicant related that he was at home when the detective contacted him about setting up an interview to review a photo lineup. According to the applicant, the interview was to take place at his residence, between the hours of 5 to 8 P.M. the day after the shooting. The applicant asserts the detective never showed up at the assigned time, and he never contacted the detective because he had no telephone number to reach him.

{7}The applicant stated he gave his cell phone number to the detective. However, he has never attempted to contact the detective to reopen the case. Whereupon, the applicant's testimony was concluded.

{8}The Attorney General called Columbus Police Detective Paul Boldin to testify. Detective Boldin stated he met with Mr. Muldrow at the hospital on the night of the incident. Detective Boldin was accompanied by Detective Chapman who also interviewed witnesses in the waiting room. Detective Boldin testified that upon meeting with victims he typically provides them with his business card which contains contact numbers. Detective Boldin testified he set up a follow-up interview with Mr. Muldrow while in the examining room at the hospital. The followup interview was set for 11:00 P.M. the following day, September 28, 2008, at Mr. Muldrow's residence. Detective Boldin stated he arrived at the Muldrow residence at 11:00 P.M., the residence was dark and no one answered the door. Upon receiving no response, he went back to the police department. Subsequently, he placed two phone calls to the residence and received no response. Detective Boldin related a followup interview was necessary since the word "Atchison" was mentioned. Detective Boldin explained that in the city of Columbus there is a street gang that refers to itself as Atchison and further investigation could have revealed whether the street gang was involved in this incident. Consequently, Detective Boldin produced a computer generated document which contained pictures of gang members associated with this group and he wanted Mr. Muldrow to view this page so a possible identification of the shooter could be made.

{9}The case remained open for seven weeks, but due to the failure of the applicant to contact him the case was closed. Detective Boldin stated that Mr. Muldrow's unresponsiveness led to the closing of the case.

{10}Upon cross-examination, the officer testified based on his experience with Franklin County Common Pleas Court, that unless there is a cooperative victim a case could not be successfully prosecuted. He also testified that although there were other

witnesses no followup was done.   Whereupon, Detective Boldin's testimony was concluded.

{11}The applicant called rebuttal witness Andrew Muldrow, the applicant's father.   Mr. Muldrow testified he was called to the hospital on the night of the shooting and that he was at the hospital for approximately five hours until the applicant was released.   He stated that later the applicant returned to the OSU Hospital Campus location.

{12}Andrew stated due to his disability he is at the residence everyday. However, the only telephone at the home is a cell phone owned by the applicant.   He testified no police officer ever came to the door, made a telephone call, or left a business card at the residence.    Whereupon, Andrew Muldrow's testimony was concluded.

{13}Yvonne Muldrow, the applicant's mother, was then called to testify.   Ms. Muldrow testified concerning the events which occurred on the night of the shooting. She related that a detective called the home requesting to speak with Yvan, but he was at OSU Hospital at the time.   She was unaware of any police officer coming to the door or any phone calls other than the initial call.

{14}On cross-examination, Ms. Muldrow stated an appointment was made to meet her son on the day he was initially released from the hospital, but her son returned to the hospital prior to the meeting time and furthermore, the officer never showed up at the residence.   Whereupon, the testimony of Yvonne Muldrow was concluded.

{15}In closing, the applicant characterized this case as a failure to communicate, not a failure to cooperate.   The applicant stated witnesses testified the officer never came to the door, there was only one phone call, and there was no followup by the Columbus Police Department.   Furthermore, there was no followup with other witnesses to this incident who were initially interviewed by Detective Chapman at the hospital.   The applicant asserts a lack of effort by the police caused the criminal investigation to fail, not any action or inaction by the applicant.

{16}The Attorney General urges this panel to follow the holdings in *In re Colbert III*, V92-54501jud (6-29-95); *In re Dray* (1989), 61 Ohio Misc. 2d 417; and *In re Deardorff*, V79-3236jud (9-4-81). These cases stand for the proposition that an action or inaction on the part of the applicant which impedes or impairs a criminal investigation is a failure to fully cooperate. Also, a crime is not only committed against the individual but against society at large and, accordingly, a victim has an obligation to assist law enforcement to get criminals off the streets.

{17}The Attorney General argued that although the applicant characterized this situation as a failure to communicate, it questions, why the applicant did not contact police after the first scheduled meeting did not occur. In addition, the Attorney General questions why the applicant not return the detective's phone call. The applicant's mother testified that the detective did call, but the applicant never attempted to return the call. Accordingly, the applicant's claim should be denied based on the applicant's failure to fully cooperate with police. Whereupon, the hearing was concluded.

{18}On April 6, 2011, the court issued a notice informing the parties that pursuant to Rule 1.12(b) of the Rules of Professional Conduct, Commissioner Randi M. Ostry recused herself from the case at bar and requested the parties file written notification by May 6, 2011 as to whether they want the motion decided by the two remaining panel commissioners who sat at the hearing; or they wanted a randomly selected third commissioner to review the case file and hearing and reach a decision together with the two sitting commissioners; or they want a rehearing of the matter.

{19}On April 18, 2011, the parties filed a joint notice wishing to proceed with this matter based upon the decision of the two remaining panel of commissioners.

{20}R.C. 2743.60(C) states:

"(C) The attorney general, a panel of commissioners, or a judge of the court of claims, upon a finding that the claimant or victim has not fully cooperated with appropriate law enforcement agencies, may deny a claim or reconsider and reduce an award of reparations."

{21}The Attorney General has the burden with respect to proof of non-cooperation with law enforcement authorities [exclusionary criteria R.C. 2743.60]. *In re Williams*, V77-0739jud (3-26-79); and *In re Brown*, V78-3638jud (12-13-79).

{22}"As a general rule any action, inaction, or inexcusable neglect by an applicant which substantially impedes or impairs investigation or prosecution proceedings which have been initiated by the law enforcement authorities or which would have been initiated but for the action, inaction, or inexcusable neglect, constitutes a failure to fully cooperate as required by R.C. 2743.60(C)." *In re Dray* (1989), 61 Ohio Misc. 2d 417, 419.

{23}The intent of the legislature in enacting the full cooperation provision was to encourage victims to affirmatively aid the authorities in identifying and prosecuting criminal offenders. A crime is an offense not only against the victim, but also against the citizens of this state. Therefore, the people of Ohio, in compensating a victim for injuries, have the right to expect the victim to aid the people in protecting themselves against further crime which may possibly be committed by the same offender. *In re Bolster* (May 2, 1979), Ct. of Claims No. V77-0964jud, unreported.

{24}We have viewed the intent of the legislature in enacting the full cooperation provision was to encourage victims to affirmatively aid the authorities in the prosecution of criminal offenders. *In re Deardoff*, V79-3236jud (9-4-81).

{25}Black's Law Dictionary Sixth Edition (1990) defines preponderance of the evidence as: "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not."

{26}Black's Law Dictionary Sixth Edition (1990) defines burden of proof as: "the necessity or duty of affirmatively proving a fact or facts in dispute on an issue raised between the parties in a cause. The obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court."

{27}The credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact. *State v. DeHass* (1967), 10 Ohio St. 2d 230, 39 O.O. 2d 366, 227 N.E. 2d 212, paragraph one of the syllabus. The court is free to believe or disbelieve, all or any part of each witness's testimony. *State v. Antill* (1964), 176 Ohio St. 61, 26 O.O. 2d 366, 197 N.E. 2d 548.

{28}From review of the case file and upon full and careful consideration given to all the testimony presented and the arguments of the parties at the hearing, we find the applicant's claim should be denied pursuant to R.C. 2743.60(C). R.C. 2743.60(C) requires that the applicant shall fully cooperate with law enforcement. In the case at bar, we found the testimony of Detective Boldin to be credible. We find he followed police protocol by interviewing the applicant at the hospital, setting up a home visit so photographs could be viewed, placing two telephone calls when the home visit did not transpire, and keeping the crime case open for seven weeks to allow the applicant the opportunity to cooperate.

{29}On the other hand, the applicant presented three different versions of the events surrounding the shooting, provided the police with no helpful information, never returned a call from a Columbus Police officer, and never attempted to find out about the status of the police investigation when the general telephone number to the Columbus Police Department is easily obtained.

{30}Accordingly, we find the applicant did not fully cooperate with law enforcement as is required by R.C. 2743.60(C) and his claim is denied. The Attorney General's Final Decision of March 10, 2010 is affirmed.

IT IS THEREFORE ORDERED THAT

{31}1)    State's Exhibit A is admitted into evidence;

{32}2)    The March 10, 2010 decision of the Attorney General is AFFIRMED;

{33}3)    The claim is DENIED and judgment is rendered for the state of Ohio;

{34}4)    Costs are assumed by the court of claims victims of crime fund.

_____

KARL C. KERSCHNER
Commissioner

_____

ELIZABETH LUPER SCHUSTER
Commissioner

ID #I:\VICTIMS\2010\50302\V2010-50302 Muldrow.wpd\DRB-tad

A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to Franklin County Prosecuting Attorney and to:

Filed 5-16-11
Jr. Vol. 2278, Pgs. 145-152
Sent to S.C. Reporter 8-26-11